**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                                                                   15-CR-143V

        -v-

**TRENT ADAIR HAMILTON,**

        **Defendant.**
_____

### REPORT, RECOMMENDATION, AND ORDER

This case was referred to the undersigned by the Hon. Lawrence J. Vilardo, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report on dispositive motions. Dkt. No. 55.

Defendant Trent Adair Hamilton ("the defendant") is charged in the Second Superseding Indictment with conspiring to possess with intent to distribute heroin, fentanyl, and cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; possessing with intent to distribute and distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C); and possessing with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Dkt. No. 217. The defendant filed a motion seeking omnibus discovery and to suppress intercepted telephone conversations, statements, and tangible evidence. Dkt. No. 306. The government

opposed the motion.  Dkt. Nos. 307.[1]  I heard oral argument on November 1, 2017, at which time I denied all of defendant's omnibus demands and his request to suppress statements, but reserved decision on whether to suppress the intercepted phone conversations.  Minute Entry for 11/1/2017.

## DISCUSSION AND ANALYSIS

**Suppression of Communications Intercepted by Wiretap**

The defendant argues that the Orders authorizing wire interception issued by Judge Richard J. Arcara on October 15, 2014 (14-MR-66), and Judge Frank P. Geraci, Jr. on November 14, 2014 (14-MR-615), were not supported by probable cause to believe that the telephone lines sought to be monitored were being used in a conspiracy to distribute drugs; the affidavits seeking interception did not establish that such interception was necessary; and the wiretap did not properly minimize the interception of communications that were not the target of the Orders.  Dkt. No. 306, pp. 30-57.  The government contends that the eavesdropping warrants were clearly supported by probable cause; the affidavits supporting the wiretap applications show the necessity for the interception, and that the defendant does not have standing to enforce the minimization requirements because he does not own the tapped cellphone.  Dkt. No. 307, pp. 20-31.  I will address the issues of probable cause, necessity, and minimization in turn.

---

[1]  The defendant's motion and the government's response were originally filed in Case No. 14-CR-219, which was subsequently merged into this case.  At my direction, the Clerk of the Court refiled these documents on the docket for this case, 15-CR-143, on November 9, 2017.  The defendant also filed a motion for severance (Dkt No. 265), which will be handled by the district judge to whom this case is assigned, the Hon. Lawrence J. Vilardo.  Minute Entry for 11/1/2017.

Probable Cause

       Authorizing a wiretap requires probable cause to believe that: (1) an individual is committing, has committed, or is about to commit a particular enumerated offense; (2) particular communications concerning that offense will be obtained through the wiretap; and (3) the facilities subject to interception are being used in connection with commission of the offense. 18 U.S.C. § 2518(3); *see also United States v. Diaz,* 176 F.3d 52, 110 (2d Cir. 1999). The probable cause standard to authorize a wiretap is the same as the standard for probable cause to justify a search warrant. *Diaz,* 176 F.3d at 110. That is, the government must show that under a totality of the circumstances there is a "fair probability" that "evidence of a crime will be found." *Illinois v Gates*, 462 U.S. 213, 238 (1983)

       "Probable cause to issue a wiretap order exists when the facts made known to the issuing court are 'sufficient to warrant a prudent man in believing' that evidence of a crime could be obtained through the use of electronic surveillance." *United States v. Ruggiero,* 824 F.Supp. 379, 398 (S.D.N.Y. 1993) (quoting *Beck v. Ohio,* 379 U.S. 89, 91 (1964)). The probable cause standard in this context is not "especially demanding." *United States v. Bellomo,* 954 F. Supp. 630, 636 (S.D.N.Y.1997). A wiretap application should not be reviewed in a hyper-technical manner but "must be read as a whole, and construed in a realistic and common-sense manner." *United States v. Scala,* 388 F. Supp. 2d 396, 401 (S.D.N.Y. 2005). "In other words, a court must look at the snowball, not the individual snowflakes." *Scala,* 388 F. Supp. 2d at 402 (internal quotation marks and citations omitted).

"[W]iretap orders are entitled to a presumption of validity. . . ." *United States v. Ambrosio*, 898 F. Supp. 177, 181 (2d Cir. 1995) (citing *United States v. Fury*, 554 F.2d 522, 530 (2d Cir. 1977)). For this reason, an order authorizing a wiretap will not be undermined "as long as there existed a substantial basis for a . . . judge to conclude that a search would uncover evidence of wrong-doing." *United States v. Biaggi*, 853 F.2d 89, 95 (2d Cir. 1988) (internal quotations and citations omitted), *cert. denied*, 489 U.S. 1052 (1989); *see also United States v. Wagner,* 989 F.2d 69, 72 (2d Cir. 1993) (holding generally that a reviewing court owes great deference to the prior findings of an issuing judicial officer that probable cause exists for a wiretap).

Having reviewed DEA Special Agent Shane Nastoff's supporting affidavits for the two challenged wiretap orders – 14-MR-66 and 14-MR-6015[2] – I find that there was a substantial basis for Judges Arcara and Geraci to conclude that a wiretap would yield evidence of drug trafficking.

In the applications to wiretap phones presumably used by co-defendant Michael Paul Mitchell (14-MR-66) and the defendant himself (14-MR-6015), SA Nastoff detailed information from numerous confidential sources (CSs) about Hamilton and Mitchell's cocaine and heroin distribution activity. The information provided by these informants was corroborated by surveillance and other means. CSs made several controlled drug buys from Hamilton and Mitchell, some using the target telephones. In

---

[2] The government has gone on record that no communications were intercepted over TT-2, bearing phone number 716-266-7620, which was included in 14-MR-6015. Dkt. No. 72, p. 20.

my view, this constitutes a reasonable basis to believe that defendant was involved in drug crimes, that the target cellphones were being used by Mitchell and Hamilton to facilitate those crimes, and that the wiretap would pick up communications relating to drug distribution.

The defendant raises various objections to the affidavits which I find do not undermine the validity of the wiretap orders. First, the defendant attacks SA Nastoff's conclusion that it was the defendant who was recorded and that he was using cryptic language to negotiate a drug deal, arguing that Nastoff is not a voice recognition or drug jargon expert. However, there is no requirement that an agent be "certified" in voice recognition techniques or drug jargon to render opinions as to whether it was a particular person talking during the intercepted conversation or whether a particular conversation was about drugs. The ultimate questions of whether the defendant was the person picked up on the wiretap or whether he was brokering a drug sale are matters to be left to a jury. For purposes of establishing probable cause, SA Nastoff detailed the exact language used in some of the intercepted conversations so that the Judges could decide for themselves whether the intercepted parties were using coded language for drugs.

Likewise, the fact that the CSs had prior drug convictions and/or were cooperating to get more favorable treatment from a prosecutor does not render the information they provided presumptively incredible. As a practical matter, it is often drug users or small scale dealers, rather than law abiding citizens, who have

5

information about who is dealing drugs on a larger scale.  In his affidavit, SA Nastoff disclosed each CS's circumstances that would bear on his or her credibility.  In this regard, Judges Arcara and Geraci were free to make their own informed decisions as to whether the CSs were being truthful in whole or in part.  I am not persuaded by the defendant's objection that a particular CS's information was "stale" because he/she reported that Hamilton had purchased large quantities of cocaine in Chicago in 2006 or 2007, and transported them back to New York.  This was only one detail in the CS's report that:  by 2014, Mitchell, Hamilton, and their co-defendant, Troy Gillon, were selling heroin; Gillon had a practice of purchasing large quantities of drugs from other cities for a lower price; and he transported them in a car with a concealed "trap" as Hamilton had several years before.  Nastoff App., ¶¶ 14-18.  The allegedly "stale" detail about Hamilton was simply context for the CS's otherwise timely information.

       Finally, contrary to the defendant's argument, I do not find that it was "pure speculation" for SA Nastoff to conclude that the "Trent" referred to in recorded calls was the defendant, Trent Hamilton.  Dkt. No. 306, p. 41.  The defendant was the only "Trent" known to investigators and by all accounts, he was at the heart of the alleged drug conspiracy.  For the foregoing reasons, I find that the wiretap orders, 14-MR-66 and 14-MR-6015, were supported by probable cause.

Necessity

18 U.S.C. § 2518(1)(c) requires that each application for an order authorizing or approving the interception of a wire, oral, or electronic communication shall include:

> a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

"[G]eneralized and conclusory statements that other investigative procedures would prove unsuccessful" will not satisfy the statute. *United States v. Lilla*, 699 F.2d 99, 104 (2d Cir. 1983).

At the same time, the government is not required to wait until "all other possible means of investigation have been exhausted by investigative agents . . . ." *United States v. Torres*, 901 F.2d 205, 231 (2d Cir. 1990) (abrogated on other grounds as recognized by *United States v. Marcus,* 628 F.3d 36, 41 (2d Cir. 2010)). Rather, "the agents [need only] inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." *Id.* This is especially true when law enforcement is investigating a "complex and sprawling criminal case[ ] involving [a] large conspirac[y]," which cannot be "adequately surveilled by traditional investigative methods." *United States v. Concepcion*, 579 F.3d 214, 218 (2d Cir. 2009) (internal citations omitted). "Wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation." *United States v. Young*, 822 F.2d 1234, 1237

7

(2d Cir. 1987) (quoting *United States v. Steinberg*, 525 F.2d 1126, 1130 (2d Cir. 1975), *cert. denied*, 425 U.S. 971 (1976)).

SA Nastoff's affidavits describe the various methods used to investigate the drug activities of the defendants, especially Mitchell and Hamilton, including: reviewing Hamilton and Mitchell's prior arrests, the prior seizure of cocaine from Hamilton, and the prior seizure of bundled currency from Mitchell and Hamilton; interviewing numerous CSs regarding Hamilton, Mitchell, and Gillon's drug activities; conducting controlled drug purchases from Hamilton and Mitchell using CSs, monitoring pole cameras outside of Hamilton, Gillon, and Mitchell's respective residences; getting information from NYS Division of Parole about Hamilton's cell phone use; installing GPS tracking devices on Hamilton, Mitchell, and Gillon's cars; using pen registers and toll analysis to monitor Hamilton and Mitchell's cell phone use; and conducting traffic stops and physical surveillance of Mitchell, Hamilton, and Gillon.  SA Nastoff Aff. 14-MR-66 & 14-MR-6015.

Despite these efforts, SA Nastoff explains that certain traditional investigative techniques were unsuccessful, or were unlikely to reveal the full scope of the drug operation, or were too dangerous to employ.  SA Nastoff Aff., 14-MR-66 & 14-MR-6015.  For example, according to SA Nastoff, law enforcement had been unable to arrange a direct buy from Gillon and GPS was unreliable because the defendants frequently switched cars.  The investigative team decided against "pulling" the trash from Mitchell and Hamilton's homes because they lived in multi-unit residences and it

would be difficult to determine if the trash in fact belonged to them.  The investigators also decided against having an officer attempt to infiltrate defendants' drug operation because it would be too dangerous.  Moreover, because prior investigation established that Hamilton, Mitchell, and Gillon used cell phones to make drug sales, it was likely that intercepting those defendants' phone conversations would yield evidence where other investigative measures would not.  I find that this information, taken in its totality, sufficiently demonstrated the necessity of wiretapping the target cell phones.

<u>Minimization</u>

        Title III provides that every court order authorizing a wiretap "shall contain a provision that the authorization to intercept . . . shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5).  Whether a wiretap has been properly minimized "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time."  *Scott v. United States,* 436 U.S. 128, 136-37 (1978).  "[T]he mere fact that every conversation is monitored does not necessarily render the surveillance violative of the minimization requirement of the statute . . . [as] no electronic surveillance can be so conducted that innocent conversation can be totally eliminated."  *United States v. Salas,* No. 07 Cr. 557(JGK), 2008 WL 4840872, at *6 (S.D.N.Y. Nov. 5, 2008) (internal citations omitted).

        The Orders authorizing the interception of the target cellphones explicitly state that "monitoring of conversations must immediately terminate when it is

determined that the conversation is unrelated to communications subject to interception . . . ." 14-MR-66; 14-MR-6015.  SA Nastoff's supporting affidavits detail how those monitoring the phones are instructed on "the lawful standards of minimization of the wire communications" giving special emphasis to privileged communications "between lawyer and client."  SA Nastoff Aff., 14-MR-66, ¶ 113 & 14-MR-6015, ¶ 101.  Those assigned to monitoring are required to "read and sign" the written minimization instructions.  *Id.*  There is nothing in the 10-day reports to suggest that those monitoring the target cellphones failed to minimize their surveillance consistent with these instructions, and the defendant has not identified any phone call that was intercepted which should not have been.

For these reasons, I RECOMMEND that the defendant's motion to Suppress the fruits of the wiretap orders (Dkt. No. 306) be DENIED.

Related Request for a *Franks* Hearing

In the absence of anything in SA Nastoff's affidavit which could be construed as a deliberate falsehood, defendant's request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), is DENIED.

**Suppression of Physical Evidence**

The Defendant argues that the warrant authorizing the search of his apartment at 184 High Street, Apartment 2, Lockport, NY was not supported by probable cause.  Having reviewed SA Nastoff's affidavit in support of the search warrant

(15-MJ-1012-JJM), I find that it contains ample evidence to support the conclusion that the defendant was dealing heroin and that evidence of that would be found at the High Street apartment. I find it particularly persuasive that CSs made several controlled heroin purchases from the defendant and the defendant was observed entering the High Street building before and/or after nearly every drug purchase. 15-MJ-1012-JJM, Dkt. No. 1, pp. 15-21. For this reason, it is RECOMMENDED that defendant's motion to suppress "tangible" evidence be DENIED.

## **CONCLUSION**

For the foregoing reasons, it is RECOMMENDED that defendant's motion to suppress (Dkt. No. 306) be DENIED in its entirety.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation, and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Federal Rule of Criminal Procedure 59(b)(2) and Local Rule of Criminal Procedure 59(c)(2).

The parties are reminded that, pursuant to Rule 59 of the Local Rules of Criminal Procedure for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection, and shall be supported by legal authority."  **Failure to comply with the provisions of Local Rule 59 may result in the District Judge's refusal to consider the objection**.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).  Local Rule 59(c)(3) mandates that "[a]ny party filing objections to a Magistrate Judge's order or recommended disposition must include with the objections to the District Judge a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge."

SO ORDERED.

DATED:   Buffalo, New York
             November 29, 2017

       *s/ H. Kenneth Schroeder, Jr.*
       **H. KENNETH SCHROEDER, JR.**
       **United States Magistrate Judge**